STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22 CVS 8\_018

CHERYL EDWARDS,
    Plaintiff,

v.

VOLVO GROUP NORTH
AMERICA, LLC, GLEN THOMAS, individually,
and his official capacity, YASHAVI SHANKER,
individually and in his official capacity, JOHN
ATALLAH, individually and in his official capacity)
LORETTA LOWMAN, individually and in her
official capacity,
    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**
**(JURY TRIAL REQUESTED)**

Now Comes the Plaintiff, Cheryl Edwards, by and through her attorney, Pamela A.

Hunter, and for her Complaint against, Volvo Group North America, LLC, Glen Thomas,

individually and in his official capacity, Yashavi Shanker, individually and in his official

capacity, John Atallah, individually and in his official capacity, and Loretta Lowman,

individually and in her official capacity, alleges and says as follows:

## PARTIES

1. That the Plaintiff is an African American and is a female citizen and resident of Guilford
   County, North Carolina, and is a member of a protected class.

2. That upon information and belief, the Defendant, Volvo Group North America, LLC, is a
   Limited Liability Company, licensed to operate under the Laws of in North Carolina.
   That the principal place of business of Defendant, Volvo Group North America, LLC, is
   Greensboro, North Carolina. Defendant, Volvo Group North America, LLC, is a
   manufacturer of on-highway and vocational vehicles.

1

3. That upon information and belief, Defendant, Glen Thomas, is a resident of Virginia. That upon information and belief, Defendant, Glen Thomas, is a co-worker of the Plaintiff at the Salem, Virginia Plant of Defendant, Volvo Group North America, LLC, also referred to as Mack Medium Duty.

4. That upon information and believe, Defendant, Yashavi Shanker, is a resident of Virginia. That upon information and belief, Defendant, Yashavi Shanker, is a co-worker of the Plaintiff at the Salem, Virginia Plant of Defendant, Volvo Group North America, LLC.

5. That upon information and belief, Defendant, John Atallah, is a resident of Virginia. That upon information and belief, Defendant, John Atallah, Director of Product Development, is the direct supervisor of the Plaintiff at the Salem, Virginia Plant of Defendant, Volvo Group North America, LLC.

6. That upon information and belief, Defendant, Loretta Lowman, is a resident of North Carolina. That upon information and belief, Defendant, Loretta Lowman, is the Human Resources Business partner responsible for the Product Development Team at the Salem, Virginia Plant of Defendant, Volvo Group North America, LLC.

7. That all acts of each of the named Defendants are imputed to the other Defendants, jointly and severally, under the laws of Agency and Respondent Superior.

## **FACTS**

8. That the Plaintiff became employed with Defendant, Volvo Group North America, LLC, in May of 1995, as an Accounts Payable Clerk., in the Corporate Headquarters which is located in Greensboro, North Carolina.

2

9. From May of 1995 until September 28, 2022, Plaintiff was promoted to various positions within the company including but not limited to:

    a.   Engineering Systems Administrator;

    b.   Product Structure Engineer;

    c.   Systems Engineer II.

10. The Plaintiff applied for and was promoted to the position of Product Documentation Engineer at the Roanoke Valley Operations facility, located in Salem, Virginia.

11. As added consideration to accept this position, Plaintiff relocated to Salem, Virginia on or about June 1, 2020.

12. Plaintiff was the only female in the Department of her new position as Product Documentation Engineer. There were 12 males in the Department which Plaintiff worked.

13. Upon information and belief, the Plaintiff was the only employee to suffer the extreme humiliation, anxiety, depression and emotional distress, while employed at the Salem, Virginia location of Defendant, Volvo Group North America, LLC.

14. Plaintiff tolerated and endured this extreme humiliation, anxiety, depression and emotional distress as a condition of Plaintiff's employment with Defendant, Volvo Group North America, LLC.

15. From the time of Plaintiff's relocation to Salem, Virginia until September 28, 2022, Plaintiff experienced the following acts of co-workers and supervisors which amounted to workplace harassment and hostile work environment, causing the Plaintiff to suffer extreme humiliation, anxiety, depression and emotional distress.

3

16. The conduct to which the Plaintiff was subjected to was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

17. From August, 2020 through November 4, 2020, the Plaintiff incurred the following acts of harassment:

| OCCURRENCE | FREQUENCY | BY WHOM | # of TIMES |
|---|---|---|---|
| Verbal abuse | 1-3 times/day | Glen Thomas | 44 |
| Verbal attacks, referring to the Plaintiff as drunk, telling Plaintiff and other team members that the Plaintiff could not count, that the Plaintiff could not remember things. | Daily | Glen Thomas | 110 |
| Calling Plaintiff, a "Simple Bitch" | Twice | Glen Thomas | 2 |
| Stating that when the Plaintiff leaves "they can become the 'Boy's Club' again" | Twice | Glen Thomas | 2 |
| Stating that this is the "Cleveland Pack" | Once | Glen Thomas | 1 |
| We don't screw our friends, do we Cheryl. | Once | John Atallah | 1 |
| Do you want salt on that Margarita? | Once | Glen Thomas | 1 |
| When the boss say stand down, we do what the    boss says | Once | Glen Thomas | 1 |
| Removal of belt as if to whip Plaintiff | Once | John Atallah | 1 |
| Stating to Plaintiff "that you can fix some things but you can't fix stupid, right Cheryl" | Once | Glen Thomas | 1 |
| Huddling around and near the Plaintiff's desk and speaking derogatory about Plaintiff | Twice/ week | Glen Thomas | 44 |
| Using an app in the office that makes the sound of a whip cracking and being told "get back to work!" | 2-3 times/week | Yashavi Shanker | 44 |

4

| | | | |
|---|---|---|---|
| Installing a "red flashing light" to warn Glen Thomas after he insulted Plaintiff. | 2-3 times/day | Unknown | 112 |
| Having to look at a sign that states "Comment Warning Lamp & (Cheryl)" which flashed when Glen Thomas insulted Plaintiff | Every day from October, 2020 | Yashavi Shanker | 30 |

**Total Acts of Harassment**                                                 **394**

18. In addition to the acts of workplace harassment which Plaintiff experienced, Plaintiff also maintained a good faith belief that her personal cellphone and computer had been invaded by her coworker(s) because personal and private subjects which she would have discussed with friends and family, including the husband of the Plaintiff, were generally introduced into conversation among the aforementioned coworkers in her presence at or near the time that Plaintiff had engaged in said personal conversations.

19. On or about November 4, 2020, the Plaintiff reported the ridicule which she was experiencing to the Human Resource Manager, Defendant, Loretta Lowman.

20. To corroborate the extent of the hostile work environment to which the Plaintiff was subjected, the Plaintiff provided the Defendant, Lowman, with the picture of the "Glen Comment Warning Lamp & Cheryl"

21. At the time that the Plaintiff informed Defendant of the workplace harassment and workplace hostility which she was experiencing. Plaintiff also advised Defendant, Lowman, that Plaintiff was concerned that her private cellphone had been compromised.

22. Upon receiving the complaints by the Plaintiff as well as the actual picture of the "Glen Comment Warning Lamp & Cheryl," Defendant Lowman, failed to investigate the complaints of the Plaintiff.  Instead, Defendant, Lowman, referred Plaintiff back to Plaintiff's Supervisor, Defendant, John Atallah.

5

23. The partial resolution of Plaintiff's complaints which would have been the as simple as the removal of the "Flashing Light Tower" was never pursued for more than a year, said remedy only occurred after the Plaintiff sought medical treatment for the extreme humiliation, anxiety, depression and emotional distress Plaintiff suffered as a result of the hostile work environment.

24. The Supervisor of the Plaintiff, Defendant, John Atallah, had personally witnessed many of the acts of humiliation against the Plaintiff and had acquiesced in the creation of the hostile work environment to which the Plaintiff was subjected to on a daily basis.

25. In fact, on or about November 6, 2020, Plaintiff met and reported her complaints to her supervisor; John Atallah, at which time, no corrective action was taken.

26. Plaintiff continued to experience harassment after meeting with Defendant, John Atallah, and on January 13, 2021, Plaintiff again contacted Defendant, Loretta Lowman.

27. From November, 2020, until January 13, 2021 Plaintiff continued to experience the continuous acts of workplace harassment and hostile work environment which included:

| OCCURRENCE | FREQUENCY | BY WHOM | # OF TIMES |
|---|---|---|---|
| Offensive name calling | Daily | Glen Thomas | 74 |
| Verbal abuse | 1-3 times/week | Glen Thomas | 15 |
| Witnessing racist hate symbols | Once | Glen Thomas | 1 |
| Whip cracking app | 1-2 times/week | Yashavi Shanker | 10 |
| Flashing light to celebrate insults from Glen Thomas to Plaintiff | 2-3 times/ week | Yashavi Shanker | 25 |
| After telling Plaintiff to cover her ears, John stated "when you walk around the plant, you do not want to get a hard on…" | Once | John Atallah | 1 |

6

| | | | |
|---|---|---|---|
| Do I need to bring out "My whip?" | Once | John Atallah | 1 |
| Stating that when the Plaintiff leaves "we can become the 'Boy's Club' again" | Once | Glen Thomas | 1 |

**Total Acts of Harassment**                                              **128**

28. Despite having again reported the harassing behavior to Defendant, Loretta Lowman, said Defendant, Loretta Lowman, failed to investigate or to take any corrective actions.

29. Between January 13, 2021 and July 8, 2021, Plaintiff continued to experience the following acts of harassment:

| OCCURRENCE | FREQUENCY | BY WHOM | # OF TIMES |
|---|---|---|---|
| Showed a picture of someone making a Latte with a "penis" in the cup | Once | John Atallah | 1 |
| Hearing comments "that she has a target on her back, I would hate to be her. | Once | Glen Thomas | 1 |
| Being told "she better not come in here drunk | Once | Glen Thomas | 1 |
| Using an app in the office that makes the sound of a whip cracking and being told to get back to work!" | Twice/ month | Yashavi Shanker | 36 |

**Total Acts of Harassment**                                              **39**

30. On or about, July, 2021, Plaintiff contacted the General Counsel's office to complain about the acts of harassment against her and spoke to Terrance Pickett. During that conversation, Plaintiff was referred back to, Defendant, Loretta Lowman, who had failed to assist the Plaintiff when said Defendant, Lowman, had been previously informed about the hostile work environment by Plaintiff.

31. Immediately after the conversation with Corporate Counsel, Plaintiff was contacted by Defendant, Lowman.

32. Plaintiff again advised Defendant, Lowman, of the continuous harassment which she was receiving and the response of Defendant, Lowman, was to speak with Duane Rubin in the IT Department of Defendant.

33. Between July 2021 and August, 2021, after Plaintiff had contacted the counsel for Defendant, Plaintiff continued to experience the following acts of harassment:

| OCCURRENCE | FREQUENCY | BY WHOM | # OF TIMES |
|---|---|---|---|
| Offensive name calling | Weekly | Glen Thomas | 10 |
| Verbal abuse | 1-3/ week | Glen Thomas | 15 |
| Flashing light to celebrate insults from Glen Thomas to Plaintiff | 2-3 times/ week | Yashavi Shanker | 25 |
| Huddling around and near the Plaintiff's desk and speaking derogatory about Plaintiff | Twice/week | Glen Thomas | 20 |
| **Total Acts of Harassment** | | | **70** |

34. At that time, Defendant, Loretta Lowman, recommended that Plaintiff move to another seat to avoid being in the company of other named Defendants.

35. Plaintiff advised Defendant, Loretta Lowman, that moving the Plaintiff's seat, would not help as Flash Tower would still be there and that moving would not alleviate the verbal abuse and harassment.

36. Plaintiff scheduled yet another meeting with Defendant, Loretta Lowman, on August 9, 2021, as Plaintiff became concerned that the other Defendants were listening in on her private conversations. At that time, Defendant, Loretta Lowman, referred Plaintiff to consider psychological counseling assistance from the Employee Assistance Program (EAP) rather than investigate the complaints of the Plaintiff.

8

37. This determination by Defendant, Loretta Lowman, established to Plaintiff that her attempt to obtain relief from Defendant, Loretta Lowman, was futile and would be of no benefit to the Plaintiff.

38. After the August 9, 2021, meeting with defendant, Loretta Lowman, Plaintiff became extremely upset, severally distressed, anxious and fearful.

39. Plaintiff sought medical attention and was placed on medical leave from August 11, 2021 through September 20, 2021.

40. As the result of the Plaintiff not being able to obtain any relief from the continuous acts of harassment, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) on October 3, 2021.

41. Upon return from medical leave, the acts of harassment continued; and Plaintiff was subjected to the following acts of harassment between September 21, 2021 through May, 2022:

| OCCURRENCE | FREQUENCY | BY WHOM | # OF TIMES |
|---|---|---|---|
| Verbal abuse | Once/twice monthly | Glen Thomas | 11 |
| Flashlight Tower to celebrate insults from Glen Thomas to Plaintiff | Daily until January, 2022 | Yashavi Shanker | 102 |
| Huddling around and near the Plaintiff's desk and speaking derogatory about Plaintiff | Twice | Glen Thomas | 2 |
| Using an app in the office that makes the sound of a whip cracking and being told "get back to work!" | Once/twice/monthly | Yashavi Shanker | 11 |

**Total Acts of Harassment**      **126**

42. The Plaintiff experienced and suffered a total of 757 acts of workplace harassment, workplace hostility and extreme humiliation, between August1, 2020 and May, 2022.

43. From May, 2022 through July, 2022, Plaintiff was placed on Administrative Leave while an investigation was conducted pertaining to Plaintiff's complaints of Plaintiff's computer having been hacked.

44. On or about July 6, 2022, Plaintiff was informed that Plaintiff could work in Greensboro North Carolina until September 1, 2022 at which time Plaintiff was to return to the Virginia office.

45. On or about September 20, 2022, Plaintiff was directed to return to the Virginia office and resume her position in which Plaintiff had been persistently harassed as a condition of employment.

46. Because of the mental and physical deterioration of health which said acts of harassment have caused the Plaintiff, the Plaintiff was fearful to return to Virginia.

47. As a result of the numerous acts of harassment which the Plaintiff experienced from August 1, 2020 through May, 2022, Plaintiff was diagnosed and continues to take medication for stress, anxiety, depression and sleep deprivation, related disorder, unspecified trauma, Plaintiff was determined to have behavioral, psychological or biological dysfunction/impairment consistent with the diagnosis of unspecified trauma and stress related disorder.

48. The continuous acts of harassment by the Defendants, jointly and severally, made it impossible for the Plaintiff to perform the functions of her job.

49. Said harassment interfered with the Plaintiff's job performance in the following ways:

    a.  Plaintiff lost the ability to concentrate on the assigned tasks;

10

b.  Plaintiff was in a constant nervous state which created a "fog" within her mind;

c.  Plaintiff's ability to remember was diminished;

d.  Plaintiff lost sleep as a result of the harassment which made it difficult to remain alert;

e.  Plaintiff suffered from "panic attacks'" at least once or twice a week that lasted between 5 to 10 minutes for each attack.

50. The acts complained of by the Defendants, jointly and severally above, created and was intended to create an intimidating, hostile and offensive environment at the workplace of the Plaintiff; interfered unreasonably with the Plaintiff's work performance and negatively affected and continues to negatively affect the Plaintiff's employment opportunities.

51. Plaintiff was forced to retire from employment rather than return to the place of employment in Virginia, because of the continued unabashed acts of harassment which Plaintiff suffered at the Virginia workplace as well as the deterioration of Plaintiff's health as a result of the continued acts of harassment.


## CAUSES OF ACTION

### COUNT I
### VIOLATION OF CIVIL RIGHTS ACT OF 1964

52. Paragraphs 1-51 above are realleged and incorporated into this Count by reference.

53. That after the Plaintiff was transferred to the Salem, Virginia site, the Defendants, jointly and severally, began a course of action of harassment, discrimination and disparate treatment against the Plaintiff as alleged above.

11

54. That said harassment, discrimination and disparate treatment of the Plaintiff as alleged above was based upon the fact that the Plaintiff was a female and a member of a protected class.

55. That the actions of the Defendants, jointly and severally, as alleged above were in violation of Title VII of the Civil Rights Act of 1964.

56. That as a result of the actions of Defendants, jointly and severally, the Plaintiff suffered severe medical issues.

57. That said severe medical issues were so severe that Plaintiff was forced to resign from her employment with Defendant, Volvo Group North America, LLC, on or about September 28, 2022.

58. That the acts of the Defendants, jointly and severally, as alleged above has caused the Plaintiff to suffer damages.

59. The unlawful conduct alleged above was engaged in by officers, directors, supervisors, and/or managing agents of Defendants, jointly and severally, and each of them, who were acting at all times relevant to the Complaint within the scope and course of their employment.

60. The Defendants, jointly and severally, are therefore liable for the conduct of said agents and employees under the theory of Respondent Superior.

61. Defendants, jointly and severally, committed the acts herein alleged maliciously, fraudulently and oppressively in conscious disregard of Plaintiff's rights and such acts were committed by and/or ratified by, and/or were committed with the knowledge of the employee's lack of fitness in the workplace but were allowed to proceed, by the officers, directors, and/or managing agents of Defendants, jointly and severally.

12

62. That the actions of the Defendants, jointly and severally, as alleged above are a proximate cause of the damages suffered by the Plaintiff.

63. That the acts of the Defendants, jointly and severally, as alleged above were intentional, wanton and willful.

64. That as a result of the violation of Title VII of the Civil Rights Act of 1964 by the Defendants, jointly and severally, as alleged above, the Plaintiff is entitled to receive, actual, special, consequential and punitive damages from the Defendants, jointly and severally.

## COUNT II
## VIOLATION OF NORTH CAROLINA GENERAL STATUTE §§143-422.1 et al

65. Paragraphs 1-64 above are realleged and incorporated into this Count by reference.

66. That after the Plaintiff was transferred to the Salem, Virginia site, the Defendants, jointly and severally, began a course of action of harassment, discrimination and disparate treatment against the Plaintiff as alleged above.

67. That said harassment, discrimination and disparate treatment of the Plaintiff as alleged above was based upon the fact that the Plaintiff was a female and a member of a protected class.

68. That the actions of the Defendants, jointly and severally, as alleged above were in violation of the Equal Employment Practices Act of the State of North Carolina. NCGS §143-422.1 et al.

69. That it is the public policy of the State of North Carolina to "protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age...." NCGS §143-422.2 et al.

13

70. That as a result of the actions of Defendants, jointly and severally, as alleged above, the Plaintiff suffered severe medical issues.

71. That said severe medical issues were so severe that Plaintiff was forced to resign from her employment with Defendant, Volvo Group North America, LLC, on or about September 28, 2022.

72. That the acts of the Defendants, jointly and severally, as alleged above has caused the Plaintiff to suffer damages.

73. The unlawful conduct alleged above was engaged in by officers, directors, supervisors, and/or managing agents of Defendants, jointly and severally, and each of them, who were acting at all times relevant to the Complaint within the scope and course of their employment.

74. The Defendants, jointly and severally, are therefore liable for the conduct of said agents and employees under the theory of Respondent Superior.

75. Defendants, jointly and severally, committed the acts herein alleged maliciously, fraudulently and oppressively in conscious disregard of Plaintiff's rights and such acts were committed by and/or ratified by, and/or were committed with the knowledge of the employee's lack of fitness in the workplace but were allowed to proceed, by officers, directors, and/or managing agents of Defendants, jointly and severally.

76. That the actions of the Defendants, jointly and severally, as alleged above are a proximate cause of the damages suffered by the Plaintiff.

77. That the acts of the Defendants, jointly and severally, as alleged above were intentional, wanton and willful.

78. That as a result of the violation of the Equal Employment Practices Act of the State of North Carolina by the Defendants, jointly and severally, as alleged above, the Plaintiff is entitled to receive, actual, special, consequential and punitive damages from the Defendants, jointly and severally.

## COUNT III
## NEGLIGENT RETENTION OF EMPLOYMENT

79. Paragraphs 1-78 above are realleged and incorporated into this Count by reference.

80. That the Defendant, Volvo Group North America, LLC, was made aware of the harassment, discriminatory and disparate conduct of the Defendants, Glen Thomas, Yashavi Shanker, Loretta Lowman, and John Atallah, by the Plaintiff on or after November 4, 2020.

81. That at all times pertinent and relevant to this action the Defendants, Glen Thomas, Yashavi Shanker, Loretta Lowman, and John Atallah, were employed by Defendant, Volvo Group North America, LLC, at the Salem, Virginia Plant.

82. That the Defendant, Volvo Group North America, LLC, had a duty to investigate and rectify the harassment, discriminatory and disparate treatment by the Defendants, Glen Thomas, Yashavi Shanker, Loretta Lowman, and John Atallah, against the Plaintiff.

83. That the Defendant, Volvo Group North America, LLC, failed to investigate and/or rectify the harassment, discriminatory and disparate treatment by of the Defendants, Glen Thomas, Yashavi Shanker, Loretta Lowman, and John Atallah, against the Plaintiff.

84. That as a result of the failure of the Defendant, Volvo Group North America, LLC, to investigate and/or rectify the discriminatory and disparate treatment of the Defendants,

15

Glen Thomas, Yashavi Shanker, Loretta Lowman, and John Atallah, against the Plaintiff, the Plaintiff has suffered damages.

85. Rather than objectively investigate the acts of harassment which the Plaintiff complained, the Defendant, Lowman, suggested that Plaintiff move back to Greensboro.

86. At the time in which said defendant made statement to the Plaintiff, said Defendant, Lowman, was fully aware that it was impossible for Plaintiff to perform Plaintiff's job from Greensboro.

87. That the actions of the Defendants, jointly and severally, as alleged above are a proximate cause of the damages suffered by the Plaintiff.

88. That the acts of the Defendant, Volvo Group North America, LLC, as alleged above were intentional, wanton and willful.

89. That the final act of ratification of the hostile work environment was Defendant, Volvo Group North America, LLC, informing the Plaintiff that she must return to work at the Salem, Virginia Plant.

90. That as a result of the failure of Defendant, Volvo Group North America, LLC, to investigate and/or rectify the discriminatory and disparate treatment by Defendants, Glen Thomas, Yashavi Shanker, Loretta Lowman, and John Atallah, as alleged above, the Plaintiff is entitled to receive, actual, special, consequential and punitive damages from Defendant, Volvo Group North America, LLC.

## COUNT IV

### RETALIATION FOR COMPLAING TO DEFENDANT, LORETTA LOWMAN, OF DEFENDANT, VOLVO GROUP NORTH AMERICA, LLC, HUMAN RELATIONS DEPARTMENT

91. Paragraphs 1-90 above are realleged and incorporated into this Count by reference.

16

92. Plaintiff is informed and believes, and thereon alleges that Plaintiff was retailed against in the terms and conditions of her employment, as outlined above, as a result of her good faith complaints regarding sexual harassment and discrimination upon her complaining to Defendant, Loretta Lowman, of Defendant, Volvo Group North America, LLC,

93. Plaintiff protested and opposed the harassment and discriminatory conduct, but the harassment and discrimination conduct continued and amplified.

94. Defendants, jointly and severally, failed to conduct a prompt and through good faith investigation and/or to take any remedial measures.

95. In fact, Defendants, jointly and severally, each retaliated against Plaintiff by subjecting her to adverse employment action and further harassment as a result of her good faith complaint to Defendant, Lowman.

96. As a direct and proximate result of the unlawful conduct of Defendants, jointly and severally, Plaintiff was forced to tender her resignation to Defendant, Volvo Group North America, LLC, on or about September 28, 2022.

97. As a direct and proximate result of the unlawful conduct of Defendants, jointly and severally, Plaintiff, has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at trial.

98. As a direct and proximate result of the unlawful conduct of Defendants, jointly and severally, Plaintiff, has suffered general damages including but not limited to shock,

embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at trial.

99. Defendants, jointly and severally, committed the acts herein alleged maliciously, fraudulently and oppressively in conscious disregard for Plaintiff's rights, as set forth above in detail above.

100.     Defendants, jointly and severally committed and/or ratified the acts alleged herein.

101.     These acts were committed with the knowledge of the employees' lack of fitness in the workplace but were allowed to proceed and continue by officers, directors, and/or managing agents of Defendants, jointly and severally, as set forth above in detail.

102.     Plaintiff is, therefore, entitled to recover punitive damages from Defendants, jointly and severally, in an amount according to proof at trial.

## COUNT V

### RETAILATION FOR FILING AN EQUAL EMOLYMENT OPPORTUNITY COMMISSION COMPLAINT (EEOC)

103.     Paragraphs 1-102 above are realleged and incorporated into this Count by reference.

104.     Plaintiff is informed and believes, and thereon alleges that she was retailed against in the terms and conditions of her employment, as outlined above, as a result of

her good faith complaints regarding sexual harassment and discrimination upon the filing of her EEOC Complaint.

105.     Plaintiff protested and opposed the harassment and discriminatory conduct, but the harassment and discriminatory conduct continued and amplified after the filing of Plaintiff's EEOC Complaint.

106.     Defendants, jointly and severally, failed to conduct a prompt and through good faith investigation and/or to take any remedial measures.

107.     In fact, Defendants, jointly and severally, each retaliated against Plaintiff by subjecting her to adverse employment action and further harassment as a result of Plaintiff's good faith complaint to EEOC.

108.     As a direct and proximate result of the unlawful conduct of Defendants, jointly and severally, Plaintiff was forced to tender her resignation to Defendant, Volvo Group North America, LLC, on or about September 28, 2022.

109.     As a direct and proximate result of the unlawful conduct of Defendants, jointly and severally, Plaintiff, has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at trial.

110.     As a direct and proximate result of the unlawful conduct of Defendants, jointly and severally, Plaintiff, has suffered general damages including but not limited to shock,

Case 1:23-cv-00139-WO-JLW     Document 2     Filed 02/10/23     Page 19 of 26

embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at trial.

111.     Defendants, jointly and severally, committed the acts herein alleged maliciously, fraudulently and oppressively in conscious disregard for Plaintiff's rights, as set forth above in detail.

112.     Defendants, jointly and severally committed and/or ratified the acts alleged herein.

113.     These acts were committed with the knowledge of the employees' lack of fitness in the workplace but were allowed to proceed, by officers, directors, and/or managing agents of Defendants, jointly and severally, as set forth above in detail.

114.     Plaintiff is, therefore, entitled to recover punitive damages

## COUNT VI

## SEXUAL HARRASSMENT BASED UPON GENDER

115.     Paragraphs 1-114 above are realleged and incorporated into this Count by reference.

116.     Plaintiff is informed and believes, and thereon alleges that she was harassed in terms and conditions of her employment and/or was subjected to workplace environment permeated with harassment, as outlined above, on the basis of her gender.

117.     The above conduct was so severe and/or pervasive it caused Plaintiff to perceive her work environment as an intimidating, hostile, and/or offensive work environment, which interfered with Plaintiff's ability to perform her job duties, and a reasonable person in Plaintiff's position would perceive the work environment as hostile.

20

118.     Plaintiff is informed and believes and thereon alleges that Defendants, jointly and severally, and each of them willfully, wanton and/or with reckless indifference violated Article I of the North Carolina Constitution.

119.     As a direct and proximate result of the unlawful conduct of Defendants, jointly and severally, Plaintiff has suffered special damages including but limited to past and future loss of income, benefits and other damages to be proven at trial.

120.     As a direct and proximate result of the unlawful conduct of Defendants, jointly and severally, Plaintiff has suffered general damages including but limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at trial.

121.     As a result of the conduct of the Defendants, jointly and severally, Plaintiff was forced to resign her employment with Defendant, Volvo Group North America, LLC.

122.     The unlawful conduct alleged was engaged in by the officers, directors, supervisors and/or managing agents of Defendants and each of them, who were acting at all times relevant to this Complaint within the scope and course of their employment.

123.     Defendants, jointly and severally, committed the acts herein alleged maliciously, fraudulently and oppressively in conscious disregard for Plaintiff's rights, as set forth above in detail above, Defendants, jointly and severally committed and/or ratified the acts alleged herein.

124.     These acts were committed with the knowledge of the employees' lack of fitness in the workplace but were allowed to proceed, by officers, directors, and/or managing agents of Defendants, jointly and severally, as set forth above in detail.

125.     Plaintiff is, therefore, entitled to recover punitive damages

21

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

126.    Plaintiff realleges and incorporates by reference Paragraphs 1-125 above.

127.    The Defendants, jointly and severally, intentionally caused the Plaintiff emotional

distress by their course of action of harassment, discrimination and disparate treatment

against the Plaintiff as alleged above.

128.    The Defendant, jointly and severally, knew or should have known that the

Plaintiff would suffer emotional distress upon their course of action of harassment,

discrimination and disparate treatment against the Plaintiff as alleged above.

129.    That the Plaintiff suffered through 759 acts of workplace harassment, workplace

hostility and extreme humiliation, between August, 2020 and May, 2022.

130.    Because of the actions of the Defendants, jointly and severally, in their course of

action of harassment, discrimination and disparate treatment against the Plaintiff as

alleged above, the Plaintiff has suffered intentional infliction of emotional distress.

131.    That the conduct to which the Plaintiff was subjected to was so outrageous in

character, obnoxious, repetitive acts, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized society.

132.    The actions of the Defendants, jointly and severally, in their course of action of

harassment, discrimination and disparate treatment against the Plaintiff as alleged above

is a proximate cause of the intentional infliction of emotional distress suffered by the

Plaintiff.

133.    Because of the actions of the Defendant, jointly and severally in their course of

action of harassment, discrimination and disparate treatment against the Plaintiff as

alleged above the Defendants, jointly and severally, are liable for the Intentional

Infliction of Emotional Distress of Plaintiff.

22

134.     As a result of the gross negligence of the Defendants. Jointly and severally, the Plaintiff is entitled to special, actual and punitive damages against these Defendants. Jointly and severally, in excess of Twenty-Five Thousand Dollars ($25,000.00) due to the intentional and willful conduct of the Defendants, jointly and severally.

## COUNT VIII-
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

135.     Plaintiff realleges and incorporates by reference Paragraphs 1-134 above.

136.     The Defendants, jointly and severally, had the legal duty to comply with the polices of the Civil Rights Act of 1964 and the Equal Employment Practices Act of the State of North Carolina.

137.     The Plaintiff suffered through 759 acts of workplace harassment, workplace hostility and extreme humiliation, between August, 2020 and May, 2022.

138.     The Defendants, jointly and severally, breached its duty and negligently caused the infliction of emotional distress of the Plaintiff by their course of actions of harassment, discrimination and disparate treatment against the Plaintiff as alleged above.

139.     The Defendants, jointly and severally, knew or should have known that the Plaintiff would suffer emotional distress based upon their course of action of harassment, discrimination and disparate treatment against the Plaintiff as alleged above.

140.     Because of the actions of the Defendants, jointly and severally, in their course of action of harassment, discrimination and disparate treatment against the Plaintiff as alleged above, the Plaintiff has suffered negligent infliction of emotional distress.

141.     The actions of the Defendants, jointly and severally, in their course of action of harassment, discrimination and disparate treatment against the Plaintiff as alleged above, is a proximate cause of the negligent infliction of emotional distress suffered by the Plaintiff.

142.    Because of the actions of the Defendant, jointly and severally, in their course of action of harassment, discrimination and disparate treatment against the Plaintiff as alleged above. in not immediately seeking emergency medical service/care for the decedent, is liable for the negligent infliction of emotional distress of the Plaintiff.

143.    As a result of the gross negligence of the Defendants. Jointly and severally, the Plaintiff is entitled to special, actual and punitive damages against these Defendants. Jointly and severally, in excess of Twenty-Five Thousand Dollars ($25,000.00) due to the intentional and willful conduct of the Defendants, jointly and severally.

## COUNT IX
## SLANDER PER SE

144.    Plaintiff realleges and incorporates by reference Paragraphs 1-143 above.

145.    The Defendants, jointly and severally, committed Slander *Per Se* against the Plaintiff by stating falsely that the Plaintiff "could not count" and that the Plaintiff was a" drunk."

146.    That the Defendants, jointly and severally, knew or should have known that these statements were false when said statements were made.

147.    That said statements were made to discredit and did in fact damage the professional image and reputation of the Plaintiff.

148.    That said statements were made about the Plaintiff in the presence of her co-workers and others who Plaintiff had a professional relationship with.

149.    That upon information and belief, the Plaintiff's professional reputation was damaged by the false and libelous statements.

150.    Because of the actions of the Defendants, jointly and severally, in their course of action of Slander Per Se, Plaintiff as alleged above, the Plaintiff has suffered emotional distress.

24

151.     The actions of the Defendants, jointly and severally, in their course of action of Slander Per Se against the Plaintiff as alleged above, is a proximate cause of the emotional distress suffered by the Plaintiff.

152.     Because of the actions of the Defendant, jointly and severally, in their course of action of harassment, discrimination and disparate treatment against the Plaintiff as alleged above, in not immediately seeking emergency medical service/care for the decedent, is liable for the of emotional distress of the Plaintiff.

153.     As a result of the gross negligence of the Defendants, Jointly and severally, the Plaintiff is entitled to special, actual and punitive damages against these Defendants, Jointly and severally, in excess of Twenty-Five Thousand Dollars ($25,000.00) due to the intentional and willful conduct of the Defendants, jointly and severally.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following Relief:

1. That this Verified Complaint be treated as an Affidavit for all purposes;

2. That the Plaintiff receive, actual, special, consequential damages based upon the allegations contained in Count I against the Defendants, jointly and severally;

3. That the Plaintiff receive, actual, special, consequential damages based upon the allegations contained in Count II against the Defendants, jointly and severally;

4. That the Plaintiff receive, actual, special, consequential damages based upon the allegations contained in Count III against the Defendants, jointly and severally;

5. That the Plaintiff receive, actual, special, consequential damages based upon the allegations contained in Count IV against the Defendants, jointly and severally;

6. That the Plaintiff receive, actual, special, consequential damages based upon the allegations contained in Count V against the Defendants, jointly and severally;

7.  That the Plaintiff receive, actual, special, consequential damages based upon the allegations contained in Count VI against the Defendants, jointly and severally;

8.  That the Plaintiff receive, actual, special, consequential damages based upon the allegations contained in Count VII against the Defendants, jointly and severally;

9.  That the Plaintiff receive, actual, special, consequential damages based upon the allegations contained in Count VIII against the Defendants, jointly and severally

10. That the Plaintiff receive, actual, special, consequential damages based upon the allegations contained in Count IX against the Defendants, jointly and severally

11. That a jury trial beheld on all triable issues;

12. For attorney fees as allowed by law;

13. That the Defendants, jointly and severally, be taxed with the costs of this action;

14. For any other and further relief as the Court deems just and proper.

This ___15___ day of ___Nov___, 2022.

_____
Pamela A. Hunter
715 East 5th Street, Suite 106
Charlotte, North Carolina 28202
(704) 376-7709